UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBBIE GORE, on behalf of herself and all others similarly situated, et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>BRUCE H. NAGEL, et al.,<br><br>    *Defendants*. | Civil Action No. 19-14287<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendants Derek Potts's, Potts Law Firm, L.L.P.'s, Bailey Peavey Bailey Cowan Heckaman, PLLC's, Bailey Peavey Bailey's, Bailey Perrin Bailey's, Junell & Associates, PLLC's, K. Camp Bailey, PC's, Burnett Law Firm's, and Mesh Litigation Center's (collectively, the "Texas Defendants") Motion to Dismiss, ECF No. 41, Defendants Steelman McAdams's and Annie McAdams's (collectively, the "Steelman Defendants") Motion to Dismiss, ECF No. 43, and Defendants Bruce H. Nagel's, Andrew L. O'Connor's, Robert Solomon's, and Nagel Rice, LLP's (collectively, the "Nagel Defendants," and, together with the Texas Defendants and the Steelman Defendants, "Defendants") Motion to Dismiss, ECF No. 44.  Defendants seek dismissal of Plaintiffs Debbie Gore's ("Gore") and Doris Lance-Smith's ("Lance-Smith" or, with Gore, "Plaintiffs") Amended Complaint, ECF No. 30, for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and, additionally, for lack of personal jurisdiction over the Steelman Defendants pursuant to Federal Rule of Civil Procedure 12(b)(2).

1

This matter involves a Texas plaintiff and an Alabama plaintiff who both retained Texas law firms to represent them in connection with tort claims against Ethicon and Johnson & Johnson for injuries sustained from allegedly defective pelvic mesh products (the "mesh litigation"). Although Master Short Form Complaints were filed in New Jersey state court, no further action was taken there, and their claims were ultimately settled by a Texas Special Master and approved by a Texas state court judge. Plaintiffs' tort claims in this Court are premised on their counsel taking an excessive fee in the mesh litigation. Because the Court finds that their claims arise under Texas law, not New Jersey law, the motions are **GRANTED** and the Amended Complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

**I.  FACTUAL BACKGROUND**

**A.  The Parties**

Defendant Derek Potts ("Potts") is an attorney licensed by the State of Texas and is a senior partner in Defendant The Potts Law Firm ("Potts Firm"), which maintains offices in Texas and Missouri. Am. Compl. ¶¶ 7-8. Potts oversaw the Potts Firm's representations in the mesh litigation. Id. Defendant Bailey Peavey Bailey Cowan Heckaman, PLLC is a Texas law firm and is the parent or successor to Defendants Bailey Perrin Bailey, Bailey Peavey Bailey, and K. Camp Bailey, PC (collectively, the "Bailey Entities"). Id. ¶ 9. The Bailey Entities and the Potts Firm formed Defendant Mesh Litigation Center, a Texas organization, to administratively process settlement claims from the mesh litigation. Id. ¶ 10. Defendants Junell & Associates and the Burnett Law Firm are two additional Texas law firms involved in the mesh litigation. Id. ¶¶ 13-14. As previously noted, these parties will be referred to as the Texas Defendants.

Defendant Annie McAdams ("McAdams") is an attorney licensed by the State of Texas and was previously a partner in Defendant Steelman McAdams, a law firm which maintained an

office in Texas.  Id. ¶¶ 11-12.  As previously noted, these parties will be referred to as the McAdams Defendants.

Defendants Bruce H. Nagel ("Nagel"), Robert Solomon ("Solomon"), and Andrew L. O'Connor ("O'Connor") are attorneys licensed by the State of New Jersey and are partners in Defendant Nagel Rice, LLP ("Nagel Rice"), a law firm which maintains offices in New Jersey and New York.  Id. ¶¶ 3-6.  O'Connor handled the day-to-day management of Nagel Rice's involvement in the mesh litigation, while Nagel and Solomon allegedly held supervisory roles across the firm.  Id.  As previously noted, these parties will be referred to as the Nagel Defendants.

Plaintiffs Gore and Lance-Smith are residents of Texas and Alabama, respectively.  Id. ¶¶ 1-2.  They filed and settled claims as part of the mesh litigation.

**B.     The Mesh Litigation & Settlement**

The mesh litigation involved state and federal cases arising from injuries sustained by women who were implanted with pelvic mesh products manufactured by Ethicon.  See, e.g., In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig., MDL No. 12-2327 (S.D. W. Va.).  While Plaintiffs did not participate in the federal MDL, they were involved in subsequent state court litigation.

On May 21, 2013, Texas-resident Debbie Gore retained the McAdams Defendants to pursue her claims in the mesh litigation.  See Orlofsky Decl., Ex. B, ECF No. 42.1 (the "Gore Retainer"); Slater (Plaintiff's Counsel) Cert., Ex. A, ECF No. 22.  Under the Retainer Agreement, Gore agreed to pay the McAdams Defendants "40% of the total sum collected plus any applicable expenses" and allowed them to "associate with other law firms" without increasing the required fee.  Id. at 2.  The Retainer Agreement states that Texas law governs and that any claims "arising under [the Gore Retainer] must be filed only in a court of competent jurisdiction in Harris County,

3

Houston, Texas." Id. at 3. There is no allegation that this fee arrangement would be invalid under Texas law.

On July 17, 2013, Gore consented to the McAdams Defendants associating with Bailey Perrin Bailey for purposes of prosecuting her claims in the mesh litigation and agreed that the McAdams Defendants and Bailey Perrin Bailey could split any attorneys' fees resulting from her case in the amount of 60% and 40%, respectively. See Slater MTD Cert., Ex. A, ECF No. 48.1. On July 10, 2014, Gore filed a Master Short Form Complaint in the Superior Court of New Jersey, Law Division, Atlantic County as part of the New Jersey iteration of the mesh litigation. See Orlofsky Decl., Ex. A ("Gore Short Form Complaint"). O'Connor and Nagel Rice were listed as attorneys for Gore, and Potts and the Potts Firm were listed as co-counsel. Id.

On June 2, 2012, Alabama-resident Doris Lance-Smith retained the Potts Firm and non-party Pulaski & Middleman, LLC to pursue her claims in the mesh litigation. Orlofsky Decl., Ex. D (the "Lance-Smith Retainer"). Lance-Smith agreed to pay the lawyers 40% of any recovery, plus all reasonable costs. Id. The Lance-Smith Retainer authorized the firms "to associate co-counsel as the Firms may deem necessary and to share any fees contemplated in [the agreement] with such co-counsel." Id. It did not contain a choice of law provision or a forum selection clause. On July 8, 2014, Lance-Smith filed a Master Short Form Complaint in the Superior Court of New Jersey, Law Division, Atlantic County as part of the New Jersey iteration of the mesh litigation. See id., Ex. C ("Lance-Smith Short Form Complaint"). O'Connor and Nagel Rice were listed as attorneys for Lance Smith, and Potts and the Potts Firm were listed as co-counsel.[1] Id.

---

[1] New Jersey dockets indicate that no litigation activities occurred beyond filing Gore's and Lance-Smith's short form complaints and that the matters are closed. See Orlofsky Decl., Exs. P, Q. Because these dockets and associated filings are public records, the Court may take judicial notice of them at the motion to dismiss stage. See, e.g., Groins v. Wheeler, No. 17-11632, 2018 WL 2192716, at *3 n.3 (D.N.J. May 14, 2018) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993) and Zedonis v. Lynch, 233 F. Supp. 3d 417, 422 (M.D.Pa. 2017)). For the same reason, the public filings in Texas state court, discussed infra, can also be considered.

4

On July 26, 2016, non-party Patricia Polite filed a mesh litigation lawsuit against Ethicon and Johnson & Johnson in Texas's District Court of Hardin County, 356th Judicial District (the "Texas State Court"). See Texas Defs. Br. at 5, ECF No. 42. On August 1, 2016, the Potts Firm, the Burnett Law Firm, and the Bailey Entities entered into a Master Settlement Agreement with Ethicon and Johnson & Johnson. See Orlofsky Decl., Ex. F (the "MSA").[2] The MSA was administered through the Texas State Court under the Polite docket name via Special Master Dean Brinkley (the "Special Master"), who was appointed on October 17, 2016. See Orlofsky Decl., Ex. H. The Texas State Court granted the Special Master the authority to collect all information related to potential claimants, administer the settlement process consistent with the MSA, notify claimants about their settlement offers, and provide claimants with information on how to contest or appeal their settlement offers. Id. On October 17, 2016, the Texas State Court also issued an order creating a Qualified Settlement Fund (the "QSF") to facilitate the settlement process and retaining jurisdiction thereof. See Orlofsky Decl., Ex. I. Following the creation of the QSF, "all other litigation activities pending between the parties in other forums were suspended." See Orlofsky Decl., Ex. G at 2 ("Report and Recommendation of Special Master").

On December 8, 2016, the Texas State Court approved the Special Master's Settlement Disclosure Packet, which contained various disclosures that explain the settlement process and the Special Master's damages matrix for determining each claimant's settlement award. Orlofsky Decl., Ex. K. The Texas State Court retained jurisdiction to consider "any issues arising out of or connected with th[e] settlement" and ordered the Potts Firm, the Burnett Law Firm, and the Bailey Entities to distribute the Settlement Disclosure Packet to all potential claimants. Id.

---

[2] While the full text of the confidential MSA was not provided to the Court, the Texas Defendants explain that the MSA contained "matrices listing all the claimants who qualified to participate in the aggregate settlement . . . including Gore and Lance-Smith." Texas Defs. Br. at 6. Plaintiffs do not dispute this fact.

On December 19, 2016, Gore received her Settlement Disclosure Packet from the Special Master, which explained, inter alia, that the settlement was "being administered by a settlement court in Hardin County, Texas," and which invited Gore to contact the Special Master or her attorneys with any questions regarding the information therein. See Orlofsky Decl., Ex. N. Lance-Smith received an identical mailing. See Orlofsky Decl., Ex. O.

Gore received a letter from the Mesh Litigation Center dated August 9, 2018, indicating that the Special Master and the Texas State Court had approved a gross settlement award of $45,000 and a net settlement award of $28,574.41, which Gore accepted on August 17, 2018. Orlofsky Decl., Ex. R (the "Gore Settlement"); Slater Cert., Ex. E. The Gore Settlement explained that $12,825 of her settlement would be allocated to attorneys' fees.[3]

Lance-Smith received a letter from the Mesh Litigation Center dated May 27, 2018, indicating that the Special Master and the Texas State court had approved her gross settlement award of $45,000 and her net settlement award of $12,398.58. See Orlofsky Decl., Ex. S (the "Lance-Smith Settlement"). The Lance-Smith Settlement explained that $17,100 of her settlement would be allocated to attorneys' fees.[4] Lance-Smith accepted the settlement award on June 28, 2018. Orlofsky Decl., Ex. W.

The Texas State Court and the Special Master continue to oversee and administer the mesh litigation settlement process. Texas Defs. Br. at 11; see also Orlofsky Decl., Ex. Y (June 14, 2019

---

[3] The settlement letter contains a breakdown of the attorneys' fee distribution: the Potts Firm would receive $2,436.75, the Bailey Entities would receive $1,340.22, Junell & Associates would receive $1,096.54, the Burnett Law Firm would receive $256.50, and Steelman McAdams would receive $7,695. Gore Settlement at 4. It contains no reference to any legal fee distribution to any of the Nagel Defendants.

[4] The settlement letter contains a breakdown of the attorneys' fee distribution: the Potts Firm would receive $5,771.25, the Bailey Entities would receive $3,174.19, Junell & Associates would receive 2,597.06, the Burnett Law Firm would receive $1,282.50, and the Pulaski Law Firm, PLLC, would receive $4,275. Lance-Smith Settlement at 4. It contains no reference to any legal fee distribution to any of the Nagel Defendants. Lance-Smith also had $10,534.84 in outstanding medical liens to which her settlement proceeds were applied. Id. at 3, 5.

Order of the Texas State Court reaffirming its prior orders related to the Special Master, stating that the court "retains continuing exclusive jurisdiction to consider . . . any issues arising out of or connect with" the settlement, and noting that "the laws of the State of Texas shall apply to any issues arising out of or connected with the administration of" the QSF).

### C. The Instant Litigation

Plaintiffs allege that Defendants were paid excess attorneys' fees through the Texas State Court settlement. See Am. Compl. ¶¶ 18-19. Specifically, they argue that New Jersey Court Rule 1:21-7 limits attorney contingency fees to 33.3% on the first $750,000 recovered, while the Gore and Lance-Smith Retainers allowed for attorneys' fees of up to 40% of their settlements. See id. ¶¶ 20-21, 24-26; N.J. Ct. R. 1:21-7(c). All causes of action are premised on this violation of the New Jersey Court Rules.

The Amended Complaint details eight counts: (1) legal malpractice against O'Connor and Nagel Rice for failure to ensure compliance with Rule 1:21-7, id. ¶¶ 31-35; (2) legal malpractice against Nagel and Solomon personally, id. ¶¶ 36-38; (3) "vicarious liability" against Nagel Rice based upon the alleged negligence of Nagel, Solomon, and O'Connor, id. ¶¶ 39-42; (4) breach of fiduciary duty against the Nagel Defendants based upon the alleged violations of Rule 1:21-7, id. ¶¶ 43-47; (5) legal malpractice against Defendants based upon the use of retainer agreements invalid under New Jersey law, id. ¶¶ 48-53; (6) breach of fiduciary duty against Defendants on analogous grounds, id. ¶¶ 54-57; (7) unjust enrichment against all Defendants, based upon the allegedly excessive attorneys' fees that Defendants received from Plaintiffs' settlements, id. ¶¶ 58-61; and (8) "vicarious liability" against the Potts Firm and the McAdams Defendants for any damages awarded flowing from the previous allegations, id. ¶¶ 62-64. Plaintiffs seek, inter alia, "a full accounting of all attorney's fees deducted from settlements," "a full accounting of all

7

expenses deducted from the settlements," and "disgorgement and payment into Court of all attorney's fees and expenses deducted from the settlements" of claims that originated in New Jersey state court. Id. ¶ 29.

## II. PROCEDURAL HISTORY

Gore filed this putative class action in the Superior Court of New Jersey, Law Division, Bergen County on June 10, 2019. See ECF No. 2, Ex. A. On June 26, 2019, the Texas Defendants timely removed the action to federal court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. See Notice of Removal, ECF No. 1. Plaintiffs amended their complaint on August 2, 2019, adding, in relevant part, Lance-Smith as a named plaintiff. Am. Compl. Defendants moved to dismiss the Amended Complaint on August 30, 2019, ECF Nos. 41, 43-44, which Plaintiffs opposed, ECF No. 48.

## III. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The Court may consider "a document integral to or explicitly relied upon in the complaint," In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted) (emphasis in original), as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," Pension Benefit Guar. Corp,, 998 F.2d at 1196. Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be

8

enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Plaintiffs claim that Rule 1:21-7 governs the award of attorneys' fees in their mesh litigation, and, as such, Defendants committed legal malpractice and collected improper, excessive fees in that litigation. See Pl. Br. at 5-15, ECF No. 48. Defendants argue that Texas—rather than New Jersey—law governs and that Plaintiffs fail to state a claim under Texas law. See Texas Defs. Br. at 13-27. The Court agrees with Defendants.

### A. Choice of Law[5]

A federal court sitting in diversity applies the choice of law rules of the state in which it is located. Collins v. MaryKay, Inc., 874 F.3d 176, 183 (3d Cir. 2017). As such, New Jersey choice of law rules apply.

The first step in New Jersey's choice of law analysis "is to determine whether an actual conflict exists" between the laws of New Jersey and Texas. Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 173 (3d Cir. 2011). An actual conflict exists here because New Jersey law limits the amount an attorney may collect as a contingency fee to specific percentages of the claimant's net recovery, see N.J. Ct. R. 1:21-7(c), whereas Texas law has no specific cap on contingency fees,

---

[5] Courts in this District have sometimes reserved the choice of law analysis in a putative class action for the class certification or summary judgment stage. See Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 699-700 (D.N.J. 2011) (collecting cases). However, "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss" based on the allegations of the putative class representatives. Harper v. LG Elecs. USA Inc., 595 F. Supp. 2d 486, 491 (D.N.J. 2009); see also Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250 (3d Cir. 2010) (affirming choice of law analysis conducted at motion to dismiss phase). The Court finds that the Amended Complaint and the documents supplied by the parties that are integral thereto provide a sufficient factual basis on which it may conduct a choice of law analysis at this juncture.

requiring only that such fees not be "unconscionable." See Texas Disciplinary Rules of Professional Conduct ("Texas RPC") 1.04.[6]

In tort actions, once an actual conflict of laws is found, the Court then applies the "most-significant relationship" test outlined in Sections 145 and 146 of the Restatement (Second) of Conflict of Laws ("R2d Conflicts"). See P.V. ex rel. T.V. v. Camp Jaycee, 952 A.2d 453, 460 (N.J. 2008); In re Accutane Litig., 194 A.3d 503, 520-21 (N.J. 2018).[7] Section 145 of the Restatement instructs courts to consider, inter alia, "the place where the injury occurred, the place where the conduct causing the injury occurred, the domicil, residence, nationality, place of incorporation, and place of business of the parties, and the place where the relationship, if any, between the parties is centered" when determining which state has the most-significant relationship. R2d Conflicts § 145(2)(a)-(d).[8]

Here, Texas has the most-significant relationship to all of Plaintiffs' claims. The place where the alleged injury occurred is Texas—Plaintiffs' injuries flow from the Texas State Court's award of attorneys' fees. See Gore Settlement and Lance-Smith Settlement; Am. Compl. ¶¶ 25-

---

[6] The Texas Defendants argue that Texas law applies to both Gore's and Lance-Smith's claims and that, in the alternative, Alabama law applies to Lance-Smith's claims since she is an Alabama resident who sustained her pelvic mesh injuries in Alabama. See Texas Defs. Br. at 22; Lance-Smith Short Form Complaint ¶ 7. Because Alabama law also contains no specific cap on contingency fees, the analysis would be identical under either Texas or Alabama law. See Alabama Rules of Professional Conduct 1.5. Because the Court finds that Texas law applies to Lance-Smith's claims, it need not analyze Alabama law.

[7] Additionally, if a contractual agreement contains a choice of law provision, "New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992) (citing R2d Conflicts § 187). The Gore Retainer contains a Texas choice of law provision, lending further support to the application of Texas, rather than New Jersey, law. See Gore Retainer at 3.

[8] Section 145 also incorporates Section 6 of the Restatement, which provides that

> the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

R2d Conflicts § 6.

26. Gore, a Texas resident, was injured by a pelvic mesh implant in Texas, retained a Texas law firm to pursue her claims arising from that injury, agreed to Texas choice of law in that retainer, consented to having the Bailey Entities—another set of Texas law firms—co-prosecute her claims, received extensive disclosures issued by a Texas Special Master regarding the Texas State Court's jurisdiction over and administration of claims, and ultimately agreed to a settlement award set by the Texas Special Master and approved by the Texas State Court as part of a Master Settlement Agreement negotiated by her Texas law firms. See Gore Short Form Complaint; Gore Retainer; Gore Settlement; Piorek Cert., Ex. C. Lance-Smith's ties to Texas are equally extensive, save for the fact that she is an Alabama resident who sustained her initial pelvic mesh injuries in Alabama. See supra Section I.B. And as detailed supra, the Texas State Court has overseen this complex settlement process for nearly four years, with settlement administration still ongoing. See Orlofsky Decl., Exs. F-I, Y.

Plaintiffs argue that, despite all this, New Jersey has the most-significant relationship to Plaintiffs' claims because Plaintiffs' Master Short Form Complaints were initially filed in New Jersey state court and "New Jersey law considers that matters relating to attorney's fees fall within the sphere of the state's paramount concern with its courts." See Pl. Br. at 6-15 (citing Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 418 (3d Cir. 1995) (internal quotation marks and citations omitted)). While the Court recognizes the strong public policy of New Jersey in protecting its citizens from bearing attorneys' fees in excess of its Court Rules, it declines to find, under the unique facts here, that New Jersey's interest in this litigation outweighs that of Texas.

New Jersey courts have previously extended Rule 1:21-7 to litigation involving New Jersey residents conducted beyond New Jersey's borders. For example, the Appellate Division applied Rule 1:21-7 to a retainer agreement executed between New Jersey residents and a New Jersey law

11

firm for litigation filed and prosecuted in New York. See Bernick v. Frost, 510 A.2d 56 (N.J. Super. Ct. App. Div. 1986), certif. denied 523 A.2d 158. This was so because "[b]oth parties were New Jersey residents . . . the attorney-client relationship throughout the case subsisted in New Jersey," and New Jersey had a "strong public interest . . . in regulating the economic relationship between New Jersey attorneys and their clients in tort cases." Id. at 59-60.

To protect New Jersey citizens, the Appellate Division has applied the Rule to an agreement "between an out-of-state law firm and a New Jersey resident for legal representation in connection with a personal injury claim arising out of a New Jersey accident which [was] settled before the filing of suit." Peteroy v. Trichon, 694 A.2d 597, 598 (N.J. Super. Ct. App. Div. 1997) (emphasis added). The panel reached this result because "the policies behind [Rule 1:21-7] . . . would be undermined if the rule were held to be inapplicable solely because [defendant law firm] was composed entirely of members of another state's Bar." Id. at 599. Since "[p]laintiffs and the driver of the other vehicle involved in the accident were New Jersey residents, and the accident occurred in New Jersey . . . plaintiffs' claims against the other driver were governed by New Jersey [tort] law." Id. (citations omitted). Therefore, "New Jersey had the same interest in protecting plaintiffs from overreaching conduct and excessive legal fees that it would have had if [their counsel] had been a New Jersey law firm." Id. (citations omitted). See also Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F. Supp. 1244, 1249-51 (D.N.J. 1994) (applying Rule 1:21-7 to an attorney, barred in New Jersey and Pennsylvania, who represented New Jersey residents injured in New Jersey, in Pennsylvania federal court litigation because "New Jersey ha[d] a greater interest in applying its law to the particular circumstances than d[id] Pennsylvania," since "the subject of the underlying dispute was an accident that took place in New Jersey" and New Jersey has a "strong public policy" of "protecting its citizens").

Because the New Jersey Supreme Court has "plenary authority over the practice of law" within its borders, Peteroy, 694 A.2d at 598, the Rule also reaches foreign attorneys practicing in New Jersey. See, e.g., Glick v. Barclays De Zoete Wedd, Inc., 692 A.2d 1004 (N.J. Super. Ct. App. Div. 1997) (applying Rule 1:21-7 to out-of-state attorney who appeared pro hac vice in New Jersey state court); Anderson v. Conley, 501 A.2d 1057, 1062 (N.J. Super. Ct. App. Div. 1985) (applying Rule 1:21-7 to New York counsel for New Jersey plaintiffs, injured in New Jersey, where litigation was initiated and settled in New Jersey courts with New Jersey local counsel); Elder v. Metro. Freight Carriers, Inc., 543 F.2d 513, 515 (3d Cir. 1976) (similar). Indeed, the New Jersey Supreme Court has even applied New Jersey's attorneys' fee rules where the underlying matter involved a contrary choice of law provision, but was litigated in New Jersey state court, "because the award of attorneys' fees . . . is a procedural rather than a substantive law issue." North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. 1999).[9]

All of these cases are readily distinguished from the facts here. As noted above, each involved an attorney-client relationship centered on New Jersey: the relevant injuries complained of all occurred in New Jersey, the plaintiffs were New Jersey residents, and the foreign lawyers either availed themselves of New Jersey's court system or pursued New Jersey tort claims in foreign states. As these cases consistently demonstrate, New Jersey has a significant interest in protecting its own residents from excessive legal fees. Similarly, foreign lawyers coming into New Jersey's courts are governed by New Jersey's Court Rules. See, e.g., Anderson, 501 A.2d at

---

[9] Plaintiffs emphasize that Rule 1:21-7 is described as "procedural" rather than "substantive," and thus must automatically apply here. See Pl. Br. at 6-7, 10-11. The New Jersey Supreme Court noted in North Bergen Rex Transport that the award of attorneys' fees is "procedural" for purposes of a trial court assigning fees at the end of an action. See 730 A.2d at 848. But that holding is a red herring here. Rule 1:21-7 is clearly substantive in this action because it forms the basis of Plaintiffs' substantive claims, namely legal malpractice, breach of fiduciary duty, and unjust enrichment. See Am. Compl. ¶¶ 31-64. As such, New Jersey's choice of law analysis applies. See Collins, 874 F.3d at 183 ("[W]e look to the choice-of-law rules of the forum state . . . to decide which body of substantive law to apply[.]") (emphasis added).

13

1062; Glick, 692 A.2d at 1008-09. But Plaintiff cites no authority for extending Rule 1:21-7 to litigation settled in a foreign court by out-of-state lawyers representing out-of-state plaintiffs who sustained injuries outside of New Jersey.

Here, the only connection to New Jersey is that a New Jersey law firm filed two Master Short Form Complaints in New Jersey state court on behalf of out-of-state Plaintiffs represented by out-of-state lawyers. See Gore Short Form Complaint; Lance-Smith Short Form Complaint. Otherwise, no litigation activities occurred in New Jersey. See Orlofsky Decl., Exs. P-Q. Instead, the complex settlement process, which Plaintiffs consented to after ample opportunity for objection, was reached by negotiations between Ethicon and Texas law firms and was administered by the Texas State Court and a Texas Special Master. See supra Section I.B. Indeed, no New Jersey law firms or lawyers were even listed as receiving contingency-based attorneys' fees as part of Plaintiffs' settlements. See Gore Settlement; Lance-Smith Settlement. As such, the state with the most-significant relationship to the substantive claims at issue is Texas. See Camp Jaycee, 952 A.2d at 460; see also In re Accutane Litig., 194 A.3d 503, 522-24 (N.J. 2018) (applying New Jersey law to multi-county litigation filed in New Jersey, despite plaintiffs hailing from 44 jurisdictions, for "uniformity of result" and "administrative ease and efficiency"). The Court therefore finds that Texas law applies.[10]

### B. Failure to State a Claim

Applying Texas law, Plaintiffs cannot state a claim for legal malpractice, breach of fiduciary duty, or unjust enrichment, and their Amended Complaint must be dismissed.[11]

---

[10] Because the Court finds that Texas law applies, it need not address Plaintiffs' arguments that their retainer agreements were invalid under New Jersey law and that Defendants were entitled to, at most, quantum meruit compensation. See Pl. Br. at 24-27 (citing Pinter v. McGee, 679 A.2d 728, 733 (N.J. Super. Ct. App. Div. 1996) and Glick, 692 A.2d at 1009-11).

[11] Although the complaint contains eight counts, three are for legal malpractice against various firms and lawyers. Each of these counts is premised on the same conduct, to wit, failure to "ensure compliance with the requirements of

### 1. Legal Malpractice

"To prevail on a legal malpractice claim, the plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages." Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp., 299 S.W.3d 106, 112 (Tex. 2009).

Here, Plaintiffs allege that Defendants breached a duty of care by failing to ensure compliance with the attorneys' fee requirements of New Jersey Court Rule 1:21-7. Am. Compl. ¶¶ 32-33, 37-38, 49-50. However, Plaintiffs can point to no breach of that duty under Texas law, which controls here. Plaintiffs do not dispute that the fees awarded were entirely acceptable under Texas law, and Plaintiffs make no other allegations about the adequacy of their representation by Defendants.

Under Texas law, an attorney's contingency fee agreement must be in writing and must not be "unconscionable." Texas RPC § 1.04(a), (d); see also Tex. Gov. Code § 82.065(a). The writing requirement was satisfied by the Gore and Lance-Smith Retainers, which explained that the attorneys would be entitled to up to 40% of any recovery from their mesh litigation claims. Texas courts have routinely upheld 40% contingency fee agreements. See, e.g., Douglas-Peters v. Cho, Choe & Holen, P.C., No. 05-15-1538, 2017 WL 836848, at *22-24 (Tex. App. Mar. 3, 2017). Moreover, the Special Master and Texas State Court scrutinized and approved the attorneys' fees

---

[Rule] 1:21-7 and New Jersey law regarding retainer agreements." Am. Compl. ¶ 33 (Count 1); see also id. ¶¶ 36-38 (Count 2), 48-53 (Count 5). Two counts are for breach of fiduciary duty, also premised on the same conduct, namely "failing to ensure that a valid retainer agreement was executed . . . [and failing to] ensure that the settlement monies were distributed in conformance with New Jersey Law and in particular [Rule] 1:21-7." Id. ¶¶ 45 (Count 4), 55 (Count 6). One count is for unjust enrichment, again because of "invalid" retainer agreements. Id. ¶¶ 58-61. Finally, Plaintiffs bring two counts for "vicarious liability" against the various law firms because of "improper and excessive attorneys' fees." Id. ¶¶ 39 (Count 3), 62-64 (Count 8).

awarded to Gore and Lance-Smith, see Gore Settlement; Lance-Smith Settlement, and the Court will not disturb those findings.

Additionally, under Texas law, "[u]pon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination." Texas RPC § 1.04(d). This requirement was satisfied by the Gore and Lance-Smith Settlements, which provided a detailed breakdown of attorneys' fees, and Plaintiffs do not allege otherwise. See supra Section I.B.

For the above reasons, Plaintiffs cannot state a claim for legal malpractice. Counts 1, 2, and 5 are therefore dismissed.[12]

### 2. Breach of Fiduciary Duty

Plaintiffs' claims of breach of fiduciary duty fail for the same reasons. To state a claim for breach of fiduciary duty, Plaintiffs must make a showing of damages. See Jones v. Blume, 196 S.W.3d 440, 447 (Tex. App. 2006) (noting that breach of fiduciary duty claim requires that "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach . . . result[ed] in injury to the plaintiff or benefit to the defendant"). Plaintiffs' only allegations are that Defendants breached their fiduciary duty to them by failing to ensure compliance with Rule 1:21-7. Am. Compl. ¶¶ 45, 55. But here there is simply no "injury to" Plaintiffs or improper "benefit to" Defendants, Jones, 196 S.W.3d at 447, because Rule 1:21-7 does not apply and the fees awarded to Defendants were

---

[12] Count 1 alleges legal malpractice against O'Connor and Nagel Rice; Count 2 alleges legal malpractice against Nagel and Solomon; and Count 5 alleges legal malpractice against all Defendants. See Am. Compl. ¶¶ 31-38, 48-53. Because all three counts are premised on the same conduct, see supra n.11, the analysis is identical for each Count.

16

entirely consistent with Texas law. See supra Section IV.B.1. As such, Defendants could not have breached their fiduciary duty to Plaintiffs. Counts 4 and 6 are therefore dismissed.[13]

### 3. Unjust Enrichment

Plaintiffs' claim of unjust enrichment also fails for failure to allege damages. See Stewart Title Guar. Co. v. Mims, 405 S.W.3d 319, 339 (Tex. App. 2013) ("Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one that it would be unconscionable to retain."). Because the attorneys' fees awarded to Defendants as part of the Gore and Lance-Smith Settlements were appropriate under Texas law, there were no "improper attorney's fees charged," Am. Compl. ¶ 60, and thus no "wrongfully secured" benefit for Defendants to disgorge. Count Seven is therefore dismissed.[14]

## V. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss, ECF Nos. 41, 43, 44, are **GRANTED**.[15] An appropriate order follows.

Dated: 03/24/2020

                                                */s Madeline Cox Arleo*
                                                **HON. MADELINE COX ARLEO**
                                                **UNITED STATES DISTRICT JUDGE**

---

[13] Count 4 alleges breach of fiduciary duty by the Nagel Defendants; Count 6 alleges breach of fiduciary duty by all Defendants. See Am. Compl. ¶¶ 43-47, 54-57. Because both counts are premised on the same conduct, see supra n.11, the analysis is identical for each Count.

[14] Because Plaintiffs fail to state a claim for legal malpractice, breach of fiduciary duty, and unjust enrichment, their claims for vicarious liability as against the various law firm defendants, see Counts 3 and 8, Am. Compl. ¶¶ 39-42, 62-64, are also dismissed.

[15] It bears noting again that the distributions of settlement proceeds and attorneys' fees were approved by the Texas State Court. That court has retained jurisdiction over the settlement process, so Plaintiffs are free to pursue their claims in that forum.